UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
INO, INC., d/b/a INOAH,

                        Plaintiff,

           - against -

NEEDLE & THREADS OF WEST PALM
BEACH, INC., ELI CAMEO, and DOES 1–10,

                        Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-4078 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ino, Inc., doing business as INOAH ("Ino"), sues Defendants Needle & Threads of West Palm Beach Inc. ("NTWPB") and Eli Cameo ("Cameo"), as well as unnamed Does, for copyright infringement. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). For the reasons set forth below, the Court grants in part, and denies in part, the motion, and gives Ino leave to file an amended complaint.

## BACKGROUND

### I. Factual Background[1]

The Complaint alleges that Ino "owns in exclusivity all rights, including copyrights, in and to certain two-dimensional works of art," *i.e.*, the "Subject Designs." (Complaint, Dkt. 1, ¶ 12.) Each of these Subject Designs "has been registered with the Copyright Office." (*Id.*) At some point prior to the alleged acts of infringement, Ino "produced, distributed, and sold product bearing the Subject Designs to numerous parties in the fashion and apparel industries," of which

---

[1] For purposes of this motion, the Court assumes the truth of all non-conclusory allegations in the Complaint. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

1

Defendants are a part.  (*Id.* ¶ 13.)  NTWPB is a New York corporation located in Brooklyn, New York, and Cameo "is an individual doing business in and with the state of New York on behalf of NTWPB."  (*Id.* ¶¶ 5, 8.)

According to Ino, Defendants "had access to the Subject Designs, prior to the acts of infringement alleged . . . , through [Ino's] prior sales of garments bearing the Subject Designs."  (*Id.* ¶ 15.)  Following this distribution of garments bearing the Subject Designs, each of the Defendants, without Ino's authorization, allegedly "manufactured, distributed, and/or sold garments featuring designs which are identical or substantially similar to the Subject Designs ('Infringing Products'), including but not limited to garments sold by NTWPB . . . under Style Nos. MT1370, MT1389, MT1371, MT1347, and MT1385, which all share RN 9674."  (*Id.* ¶ 14.)  These Infringing Products were allegedly distributed or sold "through, including but not limited to, a nationwide network of retail stores and through on-line websites."  (*Id.* ¶ 19.)  The Complaint includes five demonstratives comparing each of the Subject Designs with examples of the corresponding Infringing Products.  (*Id.* ¶ 16.)  These demonstratives are reproduced below:









4



## II. Procedural History

On July 15, 2019, Ino filed a complaint against Defendants, as well as other entities and individuals that have since been dismissed.[2] The Complaint asserts two claims: one of direct liability for copyright infringement, and one of indirect liability for contributory and vicarious infringement. (Complaint, Dkt. 1, ¶¶ 17–29.)

Ino attempted to serve Defendants on July 20, 2019, but with respect to NTWPB, only a "Co Tenant" was served. (Dkt. 7.) Accordingly, when Ino requested entries of default pursuant to FRCP 55(a) in October 2019 (Dkt. 12), the Clerk of Court entered a notice of default with

---

[2] The dismissed parties are: Needle & Threads of Vecceli Italy, Inc.; Vecceli Italy, Inc.; and Yoram Golan. These parties were voluntarily dismissed by Ino on June 24, 2020, pursuant to FRCP 41(a)(1)(A)(i). (*See* Dkt. 27; June 24, 2020 Docket Order.)

respect to Cameo (Dkt. 14), but declined to do so with respect to NTWPB, directing that NTWPB be properly served (October 25, 2020 Docket Order).  NTWPB was properly served on November 1, 2019.  (Dkt. 16.)  Thereafter, on January 27, 2020, the Clerk of Court entered a notice of default with respect to NTWPB, and on the same day, Ino moved for default judgment against Defendants pursuant to FRCP 55(b).  (Dkts. 18, 19.)  The Court referred the motion to the Honorable Peggy Kuo, Magistrate Judge.  (January 29, 2020 Docket Order.)

On May 6, 2020, Judge Kuo ordered Ino to file supplemental affidavits because its Motion for Default Judgment did not include, among other things, "[t]he dates of events necessary to establish Defendants' liability, including the dates of the alleged infringement and the date of the undated written Assignment [attached as an exhibit to the Motion for Default Judgment.]"[3]  (May 6, 2020 Docket Order.)   Subsequently, on May 21, 2020, Ino and Defendants jointly filed a stipulation in which Defendants made a limited appearance, expressly waiving the defenses of lack

---

[3]  The undated Assignment—signed by Amber Lee on the one hand, and Shawn Lee on behalf of Ino on the other—appears to memorialize

> certain oral agreements from 2017 whereby Amber Lee transferred and assigned all ownership of all rights, title, and interest, including without limitation all copyrights and other intellectual property rights, and the right to bring suit and file claims to enforce those intellectual property rights and copyrights, in [the Subject Designs] to Ino, Inc. in exchange for good and valuable consideration . . . .

(Dkt. 19-4.)  The Assignment moreover provides:

> [T]o the extent necessary, Amber Lee hereby transfers and assigns ownership of all rights, title, and interest, including without limitation all copyrights and other intellectual property rights, and the right to bring suit and file claims to enforce those intellectual property rights and copyrights, in [the Subject Designs] and all rights in and to the registration for [the Subject Designs] to Ino, Inc. for good and valuable consideration . . . .

(*Id.*)

of personal jurisdiction and improper service, to answer or otherwise respond to the Complaint.[4] (Dkt. 22.) On June 19, 2020, Defendants filed the instant motion to dismiss, arguing that the entire Complaint should be dismissed under FRCP 12(b)(6) for failure to state a claim. Following briefing by the parties, the Court took the motion under submission.

## DISCUSSION

### I.  Legal Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that a complaint must provide more than "a formulaic recitation of the elements of a cause of action," so as "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, citations, and alterations omitted). A complaint that gives "fair notice" of a claim, however, "does not need detailed factual allegations." *Id.* (citation omitted). Thus, as long as a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that complaint will survive a motion to dismiss under FRCP 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This standard of plausibility "does not impose a probability requirement at the pleading stage," but rather "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Twombly*, 550 U.S. at 556; *accord Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss under FRCP 12(b)(6), the Court is limited "to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by

---

[4] Given the parties' stipulation on May 21, 2020, combined with the voluntary dismissal of other defendants on June 24, 2020, *see supra* note 2, the Court deemed Ino's Motion for Default Judgment as withdrawn. (June 25, 2020 Docket Order.)

reference, and documents that, while not explicitly incorporated into the complaint, are integral to the plaintiff's claims and were relied upon in drafting the complaint." *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 480–81 (E.D.N.Y. 2020) (citations and internal quotation marks omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court "accept[s] all of the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Forest Park Pictures*, 683 F.3d at 429 (citation omitted).

## II.     The Complaint States a Plausible Claim of Direct Infringement

To state a claim of copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) illicit copying of original elements of a work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *accord Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citations omitted). The second element, illicit copying, itself requires that (1) the plaintiff's "work was 'actually copied,'" and (2) the copying "amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51 (quoting *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)). Absent direct evidence of copying, factual copying may be established circumstantially by showing that the alleged infringer "had access to the copyrighted material" and that "there are similarities between the two works that are probative of copying." *Id.* (internal citations and quotations omitted); *see also Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992) ("Copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony."). "If actual copying is established, a plaintiff must then show that the copying amounts to an improper appropriation by demonstrating that substantial similarity to protected material exists between the two works." *Laureyssens*, 964 F.2d at 140.

"'[T]he test for infringement of copyright is of necessity vague,'" and "typically presents an extremely close question of fact" that is best left for the trier of fact. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). At the same time, FRCP 8(a) requires a complaint to give the defendant "fair notice" of what the claims are. *Twombly*, 550 U.S. at 555. In assessing whether a complaint alleging copyright infringement gives fair notice, courts in this circuit have used the four-part test articulated in *Kelly v. L.L. Cool J.*, which requires a plaintiff to allege: "1) which specific original works are the subject of the copyright claim, 2) that [the] plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright," 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (citations omitted), *aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994). *See, e.g.*, *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 374 (E.D.N.Y. 2013) (citing the *Kelly* test); *Maverick Recording Co. v. Goldshteyn*, No. 05-CV-4523 (DGT), 2006 WL 2166870, at *2 (E.D.N.Y. July 31, 2006) (same); *see also Energy Intel. Grp., Inc. v. Jeffries, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015) ("In this District, courts apply the *Kelly* court's four-prong test to determine whether a claim of copyright infringement satisfies the requirements of Rule 8.").

Here, Ino easily clears the first three hurdles of the *Kelly* test. The Complaint plainly states, "Plaintiff owns in exclusivity all rights, including copyrights, in and to certain two-dimensional works of art, each of which has been registered with the Copyright Office and are pictured hereinbelow ('Subject Designs')." (Complaint, Dkt. 1, ¶ 12.) Images of each of the five Subject Designs are included in the Complaint. (*See id.* ¶ 16.) Copies of the registration certificates are not attached, but "the complaint is not required to attach copies of registration certificates or

9

provide registration numbers for all of the copyrights at issue in order to survive a motion to dismiss." *Palmer Kane LLC v. Scholastic Corp.*, No. 12-CV-3890 (TPG), 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (collecting cases); *see also Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) ("[I]t would be inappropriate for the Court to require production of the relevant certificates . . . at this preliminary stage of the litigation." (citing *Palmer Kane*, 2013 WL 709276, at *3)).  Thus, the factual allegations in Ino's Complaint, accepted as true, satisfy the first three prongs of the *Kelly* test.

Defendants resist this conclusion by arguing that Ino "fails to establish it actually own[s] or has rights to the copyrights and fails to state whether said copyrights are registered in accordance to statute[.]" (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), Dkt. 25-1, at 4; *see also* Defendant's Reply Memorandum ("Defs.' Reply"), Dkt. 32, at 4.)  The latter argument is flatly contradicted by the Complaint (*see* Dkt. 1, ¶ 12), and the former misstates Ino's burden at this stage in the proceedings, *see Warren*, 952 F. Supp. 2d at 617 ("Plaintiffs need only 'allege . . . that plaintiff owns the copyrights in those works' and 'that the copyrights have been registered in accordance with the statute,' and [Plaintiffs] have done just that.  To require a plaintiff to do more, at the motion to dismiss stage, would be to subject copyright plaintiffs to a heightened level of pleading, something this Court has been strictly proscribed from doing." (citations omitted) (quoting *Kelly*, 145 F.R.D. at 36)).  Ino properly alleges that it owns valid, registered copyrights in the Subject Designs, and that is all it must do at this juncture.

In support of their argument contesting Ino's ownership of valid copyrights in the Subject Designs, Defendants point to the registration certificates, which show Amber Lee as the author, and argue that the purported assignment of rights between Amber Lee and Ino (described in note 3, *supra*) is undated and vague. (Defs.' Mem., Dkt. 25-1, at 4; Defs.' Reply, Dkt. 32, at 4.)  Even

if these documents could be properly considered on a motion to dismiss, Defendants ask for an inference to be drawn in their favor—namely, that the undated Assignment does not validly confer the copyrights in the Subject Designs, and the attendant right to sue for infringement, to Ino. Such an inference would be improper, and the Court declines to make a legal determination regarding the Assignment without the benefit of any discovery, which surely will disclose more information about the Assignment, including its date.[5]  *Cf. Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 439 (S.D.N.Y. 2012) ("The issue [on a FRCP 12(b)(6) motion to dismiss] 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995))).

That leaves Defendants' main issue with Ino's Complaint, which is that it does not specifically identify any particular sale or other act of infringement. (Defs.' Mem., Dkt. 25-1, at

---

[5] Although the Court at this point does not make any determination regarding the Assignment or its effect, it makes some observations regarding the assignment issue in the context of copyright enforcement actions. To start, a copyright owner may transfer all or a subset of the exclusive rights under a copyright "by any means of conveyance or by operation of law." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018) (quoting 17 U.S.C. § 201(d)(1)). A conveyance must be validated in a writing signed by the copyright owner, 17 U.S.C. § 204(a), but "a later writing could memorialize or confirm an earlier oral agreement." *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (citing *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superseded on other grounds by FRCP 52(a) as stated in Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 84 (2d Cir. 2013)). Under the Copyright Act, an assignee of a copyright has statutory standing to sue only for infringements of that copyright occurring during the period of the assignee's ownership, unless the assignment expressly confers the right to sue for past accrued infringements. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). Even so, courts in this circuit have determined that, in the copyright context, a later assignment may cure a standing defect after a claim is filed, so long as the assignment occurs before trial, there is no dispute between the assignor and assignee as to who may bring the claim, and the defendant is not prejudiced. *See, e.g.*, *Wade Williams Distrib., Inc. v. Am. Broad. Co.*, No. 00-CV-5002 (LMM), 2005 WL 774275, at *4 (S.D.N.Y. Apr. 5, 2005); *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317–19 (S.D.N.Y. 1996). The Court notes that, in this case, it appears that the assignor, Amber Lee, is the wife of Ino's CEO, Shawn Lee. (Plaintiff's Opposition to Motion to Dismiss, Dkt. 29, at 1; *see also* Assignment, Dkt. 19-4.)

3–4; Defs.' Reply, Dkt. 32, 4–5.)  In other words, according to Defendants, the Complaint does not satisfy the fourth prong of the *Kelly* test because it fails to allege "by what acts during what time [Defendants] infringed the copyright." *Kelly*, 145 F.R.D. at 36.  This argument is unavailing. "A plaintiff need not provide a description of the individual instances or exact times of infringement," but rather "need only describe how the defendant violated the copyright to state a claim for copyright infringement."  *Maverick Recording*, 2006 WL 2166870, at *3 (collecting cases); *see also Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392 (JPO), 2013 WL 1386968, at *1, *3 (S.D.N.Y. Apr. 5, 2013) (concluding that the plaintiff provided sufficient details to state a claim of copyright infringement where copies of the subject photographs were attached to the complaint; the complaint alleged that the photographs were "published . . . without permission, without valid permission being obtained prior to copying, or in excess of its limited licensed"; and the names of the publications in which the subject photographs appeared were included in the complaint).

*Klauber Brothers, Inc. v. Jenny Yoo Collection, Inc.*, No. 16-CV-9260 (LLS), 2017 WL 4082483 (S.D.N.Y. July 18, 2017), a case with similar facts to this one, is particularly instructive. In that case, the plaintiff, Klauber, was the creator and owner of an original lace design.  2017 WL 4082483, at *1.  Klauber's complaint alleged that

> Klauber "sampled and sold lace bearing [its design] to numerous parties in the fashion and apparel industries," that "certain entities within the fashion and apparel industries had misappropriated [Klauber's design], and were selling lace and garments bearing illegal reproductions and/or derivations of the [design]," and that each of the defendants "had access to the [design] . . . through [various means]."

*Id.* at *4 (quoting Klauber's complaint).  Klauber's complaint further alleged "that 'without [Klauber's] authorization, [the defendants] created, sold, manufactured, caused to be manufactured, imported and/or distributed lace and/or garments incorporating lace that features

12

designs that are identical to or substantially similar to [Klauber's design].'" *Id.* (quoting Klauber's complaint). The complaint also provided specific style numbers and "side-by-side comparisons of Klauber's [design] and what the complaint alleges is an example of the infringing designs." *Id.* The defendants argued that Klauber's complaint failed to state a claim because it omitted certain details, including "the dates or time periods" in which the defendants had access to Klauber's designs. *Id.* The court rejected that argument, holding that Klauber's complaint was not required to provide the level of detail that the defendants demanded. *Id.* The court recognized that "at the pleading stage, 'a plaintiff need not specify each infringing act with respect to each original work,'" because "'discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendants' control.'" *Id.* (quoting *Plunket v. Doyle*, No. 99-CV-11006 (KMW), 2001 WL 175252, at *6 (S.D.N.Y. Feb. 22, 2001)).

The Complaint in this case is much like the complaint in *Klauber*. Like the *Klauber* complaint, the Complaint here alleges that Ino "produced, distributed and sold product bearing the Subject Designs to numerous parties in the fashion and apparel industries," and that "Defendants had access to the Subject Designs . . . through [Ino's] prior sales of garments bearing the Subject Designs." *Compare* Complaint, Dkt. 1, ¶¶ 13, 15, *with Klauber*, 2017 WL 4082483, at *4. The Complaint also alleges that "without [Ino's] authorization, Defendants, and each of them, manufactured, distributed, and/or sold garments featuring designs which are identical or substantially similar to the Subject Designs[.]" *Compare* Complaint, Dkt. 1, ¶ 14, *with Klauber*, 2017 WL 4082483, at *4. Furthermore, the Complaint provides specific style numbers, as well as several demonstratives comparing the Subject Designs with examples of the allegedly Infringing Products. *Compare* Complaint, Dkt. 1, ¶¶ 14, 16, *with Klauber*, 2017 WL 4082483, at *4. These allegations, taken as true, sufficiently state a claim that Defendants had access to and copied the

13

Subject Designs—just as they did in *Klauber*. *See Klauber*, 2017 WL 4082483, at *4. To be sure, on summary judgment or at trial, Ino will have to "offer 'significant, affirmative and probative evidence [of infringement].'" *Id.* (quoting *Jorgensen*, 351 F.3d at 51). But at this stage in the proceedings, the Complaint adequately describes the alleged infringement, and Ino need not do more to be able to proceed. *See Maverick Recording*, 2006 WL 2166870, at *3 ("A plaintiff need only describe how the defendant violated the copyright to state a claim for copyright infringement.").

*Yamashita v. Scholastic Inc.*, 936 F.3d 98 (2d Cir. 2019) (per curiam), *aff'g* No. 16-CV-9201 (KBF), 2017 WL 74738 (S.D.N.Y. Jan. 5, 2017), *cert. denied*, 140 S. Ct. 2670 (2020), a case on which Defendants heavily rely, is not to the contrary. Although *Yamashita* involved the dismissal of a plaintiff's copyright-infringement claims, the defendant in that case had procured a license to copy the subject works, so the claims really turned on whether the defendant had exceeded the terms of the license. *See* 936 F.3d at 104–05. The plaintiff's complaint, however, "failed to identify *any* specific license limitations as having been breached," and instead "offer[ed] a laundry list of license limitations that *might* have been imposed and that *might* have been violated[.]" *Id.* at 105. Characterizing the complaint as "a collection of speculative claims based on suspicion alone," the Second Circuit concluded that dismissal was proper. *Id.* Here, though, there is no indication that Defendants own any license to the Subject Designs, and far from being a mere collection of speculative claims based on suspicion alone, the Complaint (1) specifically alleges that after Ino distributed garments bearing the Subject Designs, Defendants "manufactured, distributed, and/or sold garments featuring designs which are identical or substantially similar to the Subject Designs"; (2) lists the particular style numbers of Defendants' allegedly Infringing Products; and (3) includes demonstratives comparing the Subject Designs with the allegedly

14

Infringing Products. (Complaint, Dkt. 1, ¶¶ 14–16.) Accordingly, this case is nothing like *Yamashita*, and Ino has plausibly alleged that Defendants copied the Subject Designs.

The final element of a copyright-infringement claim is substantial similarity between the protected and allegedly infringing works that "amounts to an improper or unlawful appropriation." *Jorgensen*, 351 F.3d at 51 (citation and internal quotation omitted); *accord Laureyssens*, 964 F.2d at 140. Although the question of substantial similarity is often more appropriately left for the trier of fact to decide, "in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Peter F. Gaito Architecture*, 602 F.3d at 63 (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 702 F.2d 231, 240 (2d Cir. 1983)). Moreover, where the determination of substantial similarity requires "only a visual comparison of the works," a court may consider the issue on a motion to dismiss. *Id.* at 64 (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)). "The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he [or she] set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same.'" *Id.* at 66 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)).

Defendants do not raise any specific argument regarding substantial similarity in their briefing. (*See* Defs.' Mem., Dkt. 25-1; Defs.' Reply, Dkt. 32.) Moreover, there is nothing to indicate that the Complaint fails to plausibly allege substantial similarity, particularly given the demonstratives included in the Complaint that compare the Subject Designs with examples of the allegedly Infringing Products. (*See* Complaint, Dkt. 1, ¶ 16.)

In sum, the Complaint sufficiently alleges a claim of direct copyright infringement. The motion to dismiss that claim accordingly is denied.

### III. The Complaint Fails to State a Plausible Claim of Indirect Infringement

"A defendant may be held liable for contributory copyright infringement if, 'with knowledge of the infringing activity,' it 'materially contributes to the infringing conduct of another.'" *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)). Thus, a claim of contributory infringement requires: (1) "actual or constructive knowledge of the infringing activity," *id.* (citations omitted); and (2) "participation or contribution" that is "substantial" and "bear[s] a direct relationship to the infringing acts," *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002) (citations omitted). Generally, the "[t]wo types of activities that lead to contributory liability are: (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement," so long as there are not "substantial noninfringing uses" for such equipment. *Matthew Bender*, 158 F.3d at 706 (citations omitted); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).

Separate and apart from liability for contributory infringement, a defendant can be "liable for vicarious copyright infringement if it 'profits from direct infringement while declining to exercise a right to stop or limit it.'" *Arista Records*, 784 F. Supp. 2d at 434 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). In other words, a claim of vicarious infringement requires that the defendant (1) "had the right and ability to supervise the infringing activity"; and (2) "has a direct financial interest in such activities." *Id.* at 434–35 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

With respect to the claim for indirect liability, the Complaint offers only vague, conclusory statements that Defendants "knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of garments featuring the Subject Designs" and "are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." (Complaint, Dkt. 1, ¶¶ 25–26.) These bare recitals of the elements for claims of contributory infringement and vicarious infringement are insufficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)). The Complaint does state that Defendant Cameo "is an individual doing business in and with the state of New York on behalf of NTWPB." (Complaint, Dkt. 1, ¶ 8.) But that fact alone does not reasonably give rise to an inference that Cameo had actual or constructive knowledge of NTWPB's alleged infringements, and materially contributed to such infringing activity. Nor does it reasonably give rise to an inference that Cameo had the right and ability to supervise NTWPB's allegedly infringing behavior.

Accordingly, the Complaint fails to allege a plausible claim of indirect liability for contributory or vicarious infringement, and the motion to dismiss is granted with respect to that claim. However, because the Court "should freely give leave" to amend "when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), Ino is given leave to file an amended complaint, if it so wishes.

## CONCLUSION

The motion to dismiss is denied with respect the claim of copyright infringement. The motion is granted with respect to the claim of contributory and vicarious infringement, but with leave to amend. Plaintiff shall have twenty-one (21) days to file an amended complaint, or to

17

inform the Court through a letter that it wishes to proceed solely on the direct copyright-infringement claim as alleged in the current complaint.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 14, 2020
       Brooklyn, New York